FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**IN THE UNITED STATES DISTRICT COURT**

2019 FEB -5  PM 3: 24

**FOR THE DISTRICT OF WYOMING**

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.17-CV-113-ABJ |
| ROBERT F. LAIN, AMELIA LAIN, and SEPTEMBER LIBERTY TRUST, | |
| Defendants. | |

---

**ORDER DENYING ROBERT LAIN'S MOTION FOR SUMMARY JUDGMENT, GRANTING THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR DEFAULT JUDGMENT**

---

THIS MATTER comes before the Court on Robert Lain's ("Mr. Lain") *Mo. for Summ. J. and Mem. in Supp.* ("*Lain's Mo. for Summ. J.*"), ECF No. 41, the United States of America's (the "United States") *Mo. for Summ. J.* ("*United States' Mo. for Summ. J.*), ECF No. 51, and the *United States' Mo. for Default J. Against Amelia Lain and September Liberty Trust* ("*United States' Mo. for Default J.*"), ECF No. 52. The United States filed a response to *Lain's Mo. for Summ. J.*, and Mr. Lain replied. ECF Nos. 53, 60. Mr. Lain filed a response to the *United States' Mo. for Summ. J.* (ECF No. 61), and the United States did not reply. Amelia Lain ("Mrs. Lain") and September Liberty Trust did not file a response to the *United*

*States' Mo. for Default J.* Having considered all the filings, the applicable law, and being otherwise fully advised, the Court FINDS and ORDERS as follows:

## I.   BACKGROUND

### A) Mr. Lain's Tax Liability

This case involves Mr. Lain's unpaid income taxes. On April 4, 2012, the United States Tax Court found that Mr. Lain had avoided his obligation to pay income taxes "for the taxable years 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005 . . . ." ("years at issue"). *United States' Mo. for Summ. J.* Ex. 6, ECF No. 51. His tax obligations arose as a result of payment he received for services rendered under the names La Phoenix Research and White Stone. *Id.* Mr. Lain had the checks made out to La Phoenix Research and White Stone rather than to himself. *See id.* While Mr. Lain contended that La Phoenix Research and White Stone were separate trusts, he did not provide any trust documents to the Tax Court to support that contention. *Id.*

La Phoenix Research and White Stone retained no records regarding Mr. Lain's income. *Id.* Accordingly, the Internal Revenue Service ("IRS") was forced to "reconstruct [Mr. Lain's] income for the years at issue" through the "specific item" technique. *Id.* The IRS sent summons to banks and third parties and discovered eleven instances of payments for Mr. Lain's services. *Id.* Some of the payments were large. *Id.* For example, EOG Resources, Inc., paid Mr. Lain $271,475 in 2005. *Id.* At that time, though, Mr. Lain decided he was not subject to the United States' tax system:

2

Q. And you understand that at issue in this case are tax liabilities for the years 1995 to 1996, and 1998 to 2005?
     A. Yes.

Q. And did you have income for those years?
     A. That's an ambiguous statement. You would have to define income.

Q. **Did you receive money in exchange for your consulting services?**
     A. No.

Q. Okay. Why do you say that?
     A. Well, excuse me I'm going to restate that. **Yes, I did.**

Q. Okay. **Did you file tax returns that reported that?**
     A. **No.**

Q. Why not?
     A. I didn't believe that I was under the jurisdiction.

Q. Could you explain that?
     A. No, not right now.

Q. When you say not under the jurisdiction, I don't know what you are referring to.
     A. The legislative jurisdiction of Congress.

Lain Dep. 10:11-11:9., ECF No. 51 (emphasis added). Mr. Lain currently admits he earned income but that he "stopped paying income tax . . . and stopped filing tax returns, professing to hold the belief that he was not 'under the legislative jurisdiction of Congress.'" *Resp. to United States' Mo. for Summ. J.* ¶¶ 1, 2, ECF No. 61.

Following the Tax Court's decision, the IRS assessed tax liabilities and additions to tax. *United States' Mo. for Summ. J.* 3, ECF No. 51. The United States avers that Mr. Lain owes "$1,775,060.06 for his federal income tax liabilities for the tax years at issue." *Id.* at 12.

3

The United States filed the current complaint to obtain a recovery from Mr. Lain concerning his tax obligations. The United States served a summons and a copy of the complaint on Mr. Lain on July 8, 2017. ECFs No. 1, 5. In that complaint, the United States asks that the Court "adjudge that Lain is indebted to the United States," find that the United States has valid liens against "all property and rights to property of Lain," establish that a trust Mr. Lain created ("September Liberty Trust") holds title to certain real property (the "Subject Property")[1] as his nominee, and permit the United States to sell the Subject Property to apply the proceeds to Mr. Lain's outstanding tax liabilities. *Compl.* 10, ECF No. 1.

### B) The Subject Property

The Subject Property is a parcel of real property commonly known as 3 Chapel Road, Big Piney, Wyoming 83113. *Compl.* ¶ 9, ECF No. 1. Ownership of the Subject Property is subject to dispute. Under a Contract Agreement, recorded December 22, 2009, Amelia Lain ("Mrs. Lain"), Mr. Lain's wife, was classified as "The Buyer" of the Subject Property. *Mo. for Summ. J.* Ex. 8, ECF No. 51. Ron and Faye White (the "Whites"), the sellers of the Subject Property, agreed to "sign over [the deed] and title to Amelia Lain or to what ever name they ask that the title be placed." *Id.* By means of a March 4, 2011, Warranty Deed, the Whites transferred the Subject Property to September Liberty Trust as grantee. *Mo. for*

---

[1] The Subject Property is a parcel of real property legally described as:

- Parcel # 09-00-02935
- 3 Chapel 23-137
- T30N, R111W, SEC 13, NENE

4

*Summ. J.* Ex. 9, ECF No. 51. Mrs. Lain signed the Warranty Deed "on behalf of and/or in her capacity as Liaison for the September Liberty Trust." *Id.*

### C) September Liberty Trust

The Lains and an individual named Raymond Copp purported to establish September Liberty Trust on August 19, 1995, by way of an "Affidavit of Contract and Declaration of Trust." *Id.* Ex. 10. Mr. Lain was the "initial trustee" and Mrs. Lain was the "later appointed . . . co-trustee." *Id.* September Liberty Trust held bank accounts into which Mr. Lain deposited checks made out to White Stone or La Phoenix. *Id.* Exs. 11 and 12; Lain Dep. 39:21-42:1. Two such bank accounts were with CITCO Federal Credit Union and Wells Fargo, and the Lains were authorized signers on each bank account. *See id.* Exs. 11 and 12. The Taxpayer Identification Number for September Liberty Trust related to the Wells Fargo account was Mr. Lain's social security number. *See id.* Ex. 13.

The evidence shows that the Lains and September Liberty Trust were wholly amalgamated. September Liberty Trust made the down payment for the Subject Property, and the only money that came into September Liberty Trust came from Mr. Lain. *Id.* Exs. 12 and 13; Lain Dep. 47:2-16, 52:22-53:21. The Lains paid the property taxes by signing checks "on accounts that they owned in September Liberty Trust's name." *United States' Mo. for Summ. J.* 6, Ex. 14, ECF No. 51; Lain Dep. 48:1-6. The Lains currently live on the Subject Property, which the Whites granted to September Liberty Trust, and Mr. Lain pays the utilities for the Subject Property and has built structures on the Subject Property. Lain Dep. 48:18-49:1, 56:9-11, and 58:8-16. They have also used September Liberty Trust's bank

accounts to purchase "propane, satellite TV, plumbing, repairs, etc." for the Subject Property. *United States' Mo. for Summ. J.* Exs. 15, ECF No. 51. Glaringly, the Lains made personal checks out to themselves for cash from September Liberty Trust's accounts. *Id.*

The Court must now determine whether the United States has liens upon the Subject Property for Mr. Lain's tax liabilities that the United States can foreclose.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." Anderson, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* FED. R. CIV. P. 56(c)(1)(A)–(B).

6

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

7

III.   <u>DISCUSSION</u>

**A) Mr. Lain's Motion for Summary Judgment**

Mr. Lain identifies three issues and presents three arguments for why the Court must grant summary judgment in his favor: 1) the Court does not have subject matter jurisdiction; 2) Mr. Lain is a nontaxpayer; and 3) the IRS constructed a fraudulent casefile, thereby rendering the Tax Court's decision erroneous. The Court will address each argument in turn.

1. <u>Subject Matter Jurisdiction</u>

Mr. Lain contends that this Court does not have subject matter jurisdiction because the basis for such jurisdiction was not "recorded in the record." *Lain's Mo. for Summ. J.* 22–23, ECF No. 41. An irreparable defect arose, Mr. Lain argues, because the Complaint refers to *"federal income tax"* rather than *"Federal income tax." Id.* at 23. Mr. Lain claims that the term *"federal income tax* . . . is vague and unclear, where no Federal Statute is cited in the original Complaint . . . ." *Id.*

But it is evident that Mr. Lain's assertion is factually incorrect. The United States did cite such a federal statute in the complaint. In fact, it cited multiple federal statutes: "The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1340 and 1345, and 26 U.S.C. §§ 7402 and 7403." *Compl.* ¶ 3, ECF No. 1. Mr. Lain's argument is also legally incorrect. Discrepancies between capitalizing the "f" in "federal" reflects meaningless, stylistic differences in prose—sometimes the Tenth Circuit refers to the tax as a "Federal income tax" and as a "federal income tax." *Compare Lam v. Comm'r*, No. 87–2720, 1991 WL 88533, *2 (10th Cir. May 23, 1991) (10th Cir. 1991) (Table) ("In his objection to

8

respondent's motion to dismiss, petitioner admitted he did not file a **Federal income tax return for 1984    . . . .**") (emphasis added), *with United States v. Rickman*, 638 F.2d 182, 183 (10th Cir. 1980) ("In the final analysis defendant's claim of selective prosecution rests on his argument that he was charged because of his outspoken criticism of the **federal income tax laws**.") (emphasis added). Evidently Mr. Lain concedes this argument is frivolous: "Notwithstanding, this court has jurisdiction either way." *Lain's Mo. for Summ. J.* 23, ECF No. 41.

Turning to the relevant statutory language, 28 U.S.C. § 1340 grants federal "district courts . . . original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . ." Dovetailing § 1340, 28 U.S.C. § 1345 provides, "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . ." Next, 26 U.S.C. § 7402(a) provides jurisdiction to district courts "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." Finally, 26 U.S.C. § 7403(a) reads:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

In this case, the United States' claim arises under 26 U.S.C. § 7403(c) because it seeks to enforce a claimed tax lien. The United States is also the plaintiff in this matter. Therefore, the Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1345. This

Court also has subject matter jurisdiction under 26 U.S.C. §§ 7402 and 7403, as the United States' action arises from Mr. Lain's failure to follow internal revenue laws.[2]

2. Nontaxpayer Status

Mr. Lain argues that there are "Taxpayers and Non-Taxpayers" and that "the Individual Income Tax is applicable only to those domiciled in the District of Columbia . . . ." *Lain's Mo. for Summ. J.* 23–24, ECF No. 41. Since Mr. Lain is not domiciled in the District of Columbia, he contends that his "income is non taxable by the Federal Government" and that he is "a Non-taxpayer not subject to the jurisdiction of the United States." *Id.* at 24. This argument is "patently frivolous" and contrary to established Tenth Circuit precedent:

> As the cited cases, as well as many others, have made abundantly clear, **the following arguments . . . are completely lacking in legal merit and patently frivolous**: (1) individuals . . . are not "persons" subject to taxation under the Internal Revenue code; **(2) the authority of the United States is confined to the District of Columbia**; (3) the income tax is a direct tax which is invalid absent apportionment, and *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, *modified*, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), is authority for that and other arguments against the government's power to impose income taxes on individuals; (4) the Sixteenth Amendment to the Constitution is either invalid or applies only to corporations; (5) wages are not income; (6) the income tax is voluntary; (7) no statutory authority exists for imposing an income tax on individuals; (8) the term "income" as used in the tax statutes is unconstitutionally vague and indefinite; **(9) individuals are not required to file tax returns fully reporting their income**; and (10) the Anti–Injunction Act is invalid.

---

[2] The Court additionally has subject matter jurisdiction under 28 U.S.C. § 1331, as the United States claims arise under laws of the United States.

*Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) (emphasis added). Mr. Lain

is a nontaxpayer only in the sense that he has not paid his income taxes and has illegally

failed to support this nation by doing so.

### 3. Fraudulent Case File

Finally, Mr. Lain contends that

> The smoking gun of this whole fraud is the POD-CD-692 which is found on
> the AMDISA File (See Exhibit DS-18) and the AMDIS File (See Exhibit DS-
> 19), which pursuant to the IRM 5.1.11.1.5.6 (05-27- 1999) IRS EMPLOYEE
> RETURN DELINQUENCY (See Exhibit DS- 12A), and IRM 11-12 POD-
> "Post of Duty Code found on Selection 92 cases only" (See Exhibit DS-20),
> which indicates the case file alleged to be that of Mr. Lain is a Selection Code
> "92", which is an IRS Delinquent Return case, and the SFR TC-150 indicates
> a "FULL PAID" Form 1040A (See Exhibit DS-12A).CV00026DS82.

*Lain's Mo. for Summ. J.* 26, ECF No. 41. Stated with slightly more clarity, Mr. Lain's

*Response to United States' Mo. for Summ. J.* ¶ 7, ECF No. 61, claims that "the Form 1040

. . . [was] the Form from which the assessment made," but originally the "case file against

Mr. Lain was opened in the Non-Masterfile . . . with the Form 1040A, which is a 'Full Paid'

Form . . . ." The Court does not find this argument availing to demonstrate an IRS conspiracy

to unlawfully tax Mr. Lain.[3]

First, when "any person fails to make any return required by" the tax code, "the

Secretary shall make such return from his own knowledge and from such information as he

can obtain through testimony or otherwise." 26 U.S.C. § 6020(b)(1). Such returns are "prima

---

[3] Mr. Lain also makes unsubstantiated arguments that an IRS attorney, Thomas Hodel,
withheld exculpatory evidence in the case before the Tax Court. Because Mr. Lain simply
makes conclusory allegations with no supporting evidence, he has failed to create an
argument that can survive summary judgment. *Celotex Corp.*, 477 U.S. at 322.

11

facie good and sufficient for all legal purposes." *Id.*, § 6020(b)(2). Since returns prepared by the IRS under these sections are sufficient for all legal purposes, it follows that the IRS can make assessments based on those returns. *See* 26 C.F.R. § 301.6201-1(a)(1). The "optional" Form 1040A—which Mr. Lain asserts the IRS should have created for him and based the assessment on—is only available to certain individuals. 26 C.F.R. §§ 1.6012-1(a)(6) and 1.6012-1(a)(7)(i). The option to file a Form 1040A would not have been available to Mr. Lain for certain years because of his substantial income. 33 AM. JUR. 2D FEDERAL TAXATION ¶ 1910 (explaining that an individual must use a Form 1040 if the individual's income is more than $100,000). More decisive, though, is that Mr. Lain did not exercise his option to file Form 1040A returns—he did not file any returns at all for the years at issue. If Mr. Lain wanted the assessment, which is entitled to the presumption of truth, to be based on a Form 1040A, then he should have exercised his option to file such a tax return. Instead, Mr. Lain sacrificed that option before the tax protester's altar.

Second, Mr. Lain admitted that he received payment for his services and did not file tax returns. That fact alone suggests that he was delinquent and an assessment was proper. Further, the Form 4340 and Certificate of Assessment is entitled to a presumption of correctness. *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992); *United States v. Kalevik*, 398 F. Supp. 2d 1152, 1159 (D. Colo. 2005). Mr. Lain presents no argument to suggest that the IRS miscalculated his tax liability. Simply stating that the IRS originally opened his file with an optional form upon which an assessment was never made falls far short of overcoming the presumption that the final assessment was correct.

**B) The United States' Motion for Summary Judgment**

1. <u>Reducing the Tax Assessment to a Judgment</u>

Initially, the Court must decide whether the United States is correct that it "is entitled to reduce the tax assessments made against Mr. Lain for the years at issue to judgment." *United States' Mo. for Summ. J.* 10, ECF No. 51. The United States presents two arguments: 1) the tax assessment in this matter is entitled to the presumption of truth and 2) the doctrine of *res judicata* bars Mr. Lain from contesting the tax liability the Tax Court determined Mr. Lain owed the United States.

As mentioned earlier, "a Certificate of Assessment and Payment is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas.Reg. 301.6203–1." *Long*, 972 F.2d at 1181 (citations omitted). A Certificate of Assessment and Payment, made through a Form 4340, "identifies the various assessments against defendant as well as any credits thereon for the relevant tax years." *United States v. Nuttall*, 713 F. Supp. 132, 135 (D. Del.), *aff'd*, 893 F.2d 1332 (3d Cir. 1989). Assessments detailed in the Form 4340 are presumed accurate. *Long*, 972 F.2d at 1181 (citing *Nuttall*, 713 F. Supp. at 135); *Kalevik*, 398 F. Supp. 2d at 1159.

Here, the Court already determined that Mr. Lain failed to show that the assessment was inaccurate. Mr. Lain has also not contested that he earned income and that he did not file tax returns. Accordingly, the Court concludes that the United States' first argument is sufficient to reduce its tax assessment to a judgment without considering *res judicata*.

2.  Does the United States Possess a Federal Tax Lien On the Subject Property?

Having decided that the United States' assessment against Mr. Lain is valid and should be reduced to a judgment, the Court must determine whether it can enforce the judgment by permitting foreclosure and sale of the Subject Property. To do so, the Court must first decide whether the judgment has become a lien on Mr. Lain's property. If so, the Court must determine whether Mr. Lain has property rights in the Subject Property.

### I.  Tax Judgment Becoming a Lien

26 U.S.C. § 6321 states,

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

A § 6321 lien arises at the time when the IRS makes an assessment. *Id.*, § 6322. The lien attaches to after-acquired property. *Glass City Bank of Jeanette, Pa., v. United States*, 326 U.S. 265, 267–68 (1945); *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir. 1989). Further, the lien remains enforceable until the underlying liability is paid or a lapse of time renders it unenforceable. 26 U.S.C. § 6322; *Cache Valley Bank*, 866 F.2d at 1244.

Here, the Court determined that Mr. Lain is liable to pay the United States the amount demanded in the Certificate of Assessment and Payment. Therefore, the United States has obtained a lien against "all [his] property or rights to property" until he has paid the United

14

States that amount. 26 U.S.C. §§ 6321 and 6322. The Court now must determine whether Mr. Lain has a property interest in the Subject Property.

## II. Who Owns the Subject Property?

In this case, the United States asks this Court to permit it to foreclose and sell the Subject Property without any discussion of the Subject Property's ownership. The IRS cannot obtain and foreclose a tax lien upon property in which a delinquent taxpayer holds no interest. *Holman v. United States*, 505 F.3d 1060, 1067 (10th Cir. 2007). That is why "before determining what, if any, federal tax consequences attach, we must first address the pertinent questions of state property law." *Id.* (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)); *see also Drye v. United States*, 528 U.S. 49, 58 (1999) ("We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach . . . ."). Failure to first determine whether a delinquent taxpayer has an interest in the property at issue before enforcing a federal tax lien is grounds for remand. *Holman*, 505 F.3d at 1067.

### 1) Wyoming Law

#### a) Concurrent Ownership

While the Contract Agreement originally classified Mrs. Lain as "The Buyer" of the Subject Property, it also stated that the Whites would "sign over [the deed] and title to Amelia Lain or what ever name they ask that the title be placed." The March 4, 2011, Warranty Deed indicated that September Liberty Trust was the grantee of the Subject

Property. Despite this fact, Wyoming law provides a direct route to establishing Mr. Lain's ownership interest in the Subject Property.

Under Wyoming law, "[i]n all instruments conveying real estate, or interests therein, in which the **grantee is described as a trust**, the instrument of conveyance shall . . . **be deemed to have vested title in the trustee or trustees** of the trust." WYO. STAT. ANN. § 34-2-122 (emphasis added). Therefore, when the Whites executed the Warranty Deed naming September Liberty Trust as the grantee of the Subject Property, they vested title to the Subject Property in both Mr. and Mrs. Lain because the Affidavit of Contract and Declaration of Trust names them as co-trustees.[4] What is left unanswered by the statute, though, is whether the Lains concurrently hold their estate as joint tenants, tenants by the entireties, or tenants in common.

Classification of the concurrent ownership in this matter is meaningful. Mrs. Lain did not file a joint return with Mr. Lain; therefore, she is not jointly liable for his tax obligations. *See, e.g.*, 26 U.S.C. § 6013(d)(3); *Salzer v. Comm'r*, 108 T.C.M. (CCH) 284, 2014 WL 4547041, at *3 (T.C. 2014) ("Petitioner did not file an income tax return for 2010. Necessarily, therefore, he did not file a joint return."); 26 C.F.R. § 1.6013-1(a)(2). And,

---

[4] WYO. STAT. ANN. § 34-2-122 requires that an "instrument conveying real estate" sufficiently define a trust that is the grantee under the instrument. The trust is sufficiently defined if the conveying instrument includes "the date of the trust . . . ." *Id.* Here, the Warranty Deed includes the name of the trust, and the attached letter provides the relevant date. *United States' Mo. for Summ. J.* Ex. 9, ECF No. 51. It appears that the Warranty Deed therefore sufficiently defines the September Liberty Trust. Even if the Warranty Deed failed to include the pertinent description, the Warranty Deed would not be considered invalid. *See In re Gifford*, 2013 WY 54, ¶ 16, 300 P.3d 852, 857 (Wyo. 2013). Since the Warranty Deed would still be valid, it follows that title would also still vest in Mr. and Mrs. Lain.

16

because "[p]roperty held in tenancy by the entirety is generally not subject to legal process to satisfy a debt of only one spouse," if Mr. and Mrs. Lain hold the Subject Property as tenants by the entireties the IRS cannot attach a tax lien to the Subject Property. *E.g.*, *Baker v. Speaks*, 2014 WY 117, ¶ 17, 334 P.3d 1215, 1221 (Wyo. 2014) (quoting *Estate of Marusich v. State ex. rel Dep't of Health*, 2013 WY 150, ¶ 18, 313 P.3d 1272, 1279 (Wyo. 2013)); *Talbot v. United States*, 850 F. Supp. 969, 975 (D. Wyo. 1994) ("this Court holds that under Wyoming law defining the tenancy by the entireties, neither spouse possesses an independent interest in the property. As a result, neither spouse has an interest to which a federal tax lien could attach.").

The Wyoming Supreme Court held, "[a] conveyance or devise to two persons, who are husband and wife at the time property vests . . . them [with] an estate by entireties. By reason of their legal unity by marriage, they together take the whole estate as one person." *Peters v. Dona*, 54 P.2d 817, 819 (Wyo. 1936) (citation omitted); *see also Ward Terry & Co. v. Hensen*, 297 P.2d 213, 215 (1956). When a deed grants a husband and wife title to property but is silent as to the classification of the concurrent estate they hold, the Wyoming Supreme Court formerly presumed that the deed created a tenancy by the entireties.[5] *Witzel v. Witzel*, 386 P.2d 103, 105 (Wyo. 1963) ("We accept the presumption that a conveyance to husband and wife, without saying anything more, intends the creation of a tenancy by the entireties . . . ."); *see also Case v. Sink & Rise, Inc.*, 2013 WY 19, ¶ 17, 297 P.3d 762, 766

---

[5] The Court will refer to this as the "*Witzel* presumption."

(Wyo. 2013) (invoking the *Witzel* presumption to find that stock was held in a tenancy by the entireties).[6]

The Wyoming Legislature and Wyoming Supreme Court have altered the *Witzel* presumption. First, it could be argued that the *Witzel* presumption does not square with *Choman v. Epperley*, 592 P.2d 714 (Wyo. 1979). There, the Wyoming Supreme Court held that "without the express provision for a joint tenancy, a tenancy in common is presumed." *Id.* at 718. However, that statement does not address whether a tenancy in common is still presumed when the conveyance is to a husband and wife without saying anything more. The stronger argument that the *Witzel* presumption is no longer controlling is the plain language of WYO. STAT. ANN. § 34-1-140 (emphasis added):

> A joint tenancy or a tenancy by the entirety as to any interest in real or personal property **may be** established by the owner thereof, **by designating in the instrument of conveyance or transfer, the names of such** joint tenants or **tenants by the entirety,** including his own, without the necessity of any transfer or conveyance to or through a third person.

The Wyoming Supreme Court interpreted this language to mean there is "a legislative intention" that conveyances only create "'joint tenancies' [or] 'tenancies by the entireties' . . . by the use of one or the other of those phrases." *In re Estate of Thomas*, 2009 WY 10, ¶ 11, 199 P.3d 1090, 1095 (Wyo. 2009). It now appears that "joint tenancies and/or tenancies by the entirety are disfavored in Wyoming." *Lurie v. Blackwell*, 2002 WY 110, 51 P.3d 846,

---

[6] Under the facts of *Witzel*, because the deed there "said something more" (i.e., that the husband and wife in *Witzel* were joint tenants), the Wyoming Supreme Court held that the "questioned deed conveyed an estate in joint tenancy." *Witzel*, 386 P.2d at 104, 107.

851 n.3 (Wyo. 2002) (citing *Oatts v. Jorgenson*, 821 P.2d 108, 114 (Wyo. 1991))[7]. Therefore, the current state of Wyoming law presumes a conveyance to two individuals that is silent as to the classification of the concurrent estate they hold produces a tenancy in common, and this result is so even if those two individuals are husband and wife.

Nevertheless, *Case*, which was decided after *Thomas* and *Lurie*, could be argued to support the survival of the *Witzel* presumption. In *Case*, the Wyoming Supreme Court reviewed whether jointly held stock by a husband and wife "could be counted for purposes of a quorum of shareholders in the absence of either personal attendance or a proxy from both owners[.]" ¶ 3, 297 P.3d at 763. The stock was held as "Husband and Wife with Rights of Survivorship." *Id.*, ¶ 4, 297 P.3d at 763. Citing the presumption set forth in *Witzel*, the Wyoming Supreme Court determined that the "Husband and Wife" owned the stock in a tenancy by the entireties rather than a tenancy in common. *Id.*, ¶ 17, 297 P.3d at 766. The Wyoming Supreme Court came to this conclusion without discussing that the stock did not contain the phrase "tenancy by the entireties," as *Thomas* indicated was crucial per the legislature's intent. ¶ 11, 199 P.3d at 1095.

The outcome in *Case*, though, can be read in harmony with WYO. STAT. ANN. § 34-1-140, *Thomas*, and *Lurie*. The relevant stock in *Case* was issued to the husband and wife with

---

[7] *Lurie* went on to discuss "that absent an express, 'clear manifestation' of the intention to create a joint tenancy interest on the 'face of the instrument,' a tenancy in common will be presumed." 51 P.3d at 851 n.3 (quoting *Oatts*, 821 P.2d at 114). As a result of *Lurie's* willingness to group joint tenancies and tenancies by the entireties together (e.g., "joint tenancies and/or tenancies by the entirety are disfavored in Wyoming"), the Court likewise gathers that the same presumption applies concerning tenancies by the entireties and tenancies in common.

"Rights of Survivorship." *Case*, ¶ 4, 297 P.3d at 763. The right of survivorship is a feature of both joint tenancies and tenancies by the entireties but not of a tenancy in common. *See Oatts*, 821 P.2d at 114. This detail precluded the existence a tenancy in common in *Case*. Therefore, there was no need for the Wyoming Supreme Court to defer to the modern rule that "we must assume that a tenancy in common was intended" in the absence of language indicating otherwise. *See Thomas*, ¶ 11, 199 P.3d at 1095. Accordingly, *Case* does not appear to have resurrected the *Witzel* presumption at the expense of the modern rule favoring tenancies in common. Rather, *Case* clarified that the *Witzel* presumption only arises where courts are faced with either a joint tenancy or a tenancy by the entireties. As was the situation in *Case*, such circumstances develop by reason of an instrument's inclusion of "right of survivorship" language but lack of "joint tenancy" or "tenancies by the entireties" language.

Here, by virtue of WYO. STAT. ANN. § 34-2-122, Mr. and Mrs. Lain are vested with title to the Subject Property. The Warranty Deed does not provide any indication that the Subject Property is to be held in a joint tenancy or a tenancy by the entireties, the Lain's marriage notwithstanding. Accordingly, the Court does not apply the *Witzel* presumption and instead defers to the modern rule that the Lains hold the Subject Property as tenants in common in a fee simple absolute. WYO. STAT. ANN. § 34-1-140; *Thomas*, ¶ 11, 199 P.3d at 1095; *Lurie*, 51 P.3d at 851 n.3. Because the Warranty Deed does not specify that Mr. Lain should have a different interest from Mrs. Lain, each has a fifty percent undivided interest in

the Subject Property. *Bixler v. Oro Mgmt., L.L.C.*, 2004 WY 29, ¶ 19, 86 P.3d 843, 850 (Wyo. 2004).[8]

### b) Resulting Trust

In the interest of a complete analysis, an argument could be made that Mr. Lain holds a beneficial interest vis-à-vis Mrs. Lain's interest in the Subject Property by means of a resulting trust. As early as 1889, the Supreme Court of the Territory of Wyoming stated that "when property is purchased in the name of one party, and the purchase price is actually paid at the time by another, a trust results in favor of the latter." *Culver v. Graham*, 21 P. 694, 695 (Wyo. 1889). A caveat to this rule is where one spouse pays the purchase price and title is vested in the other spouse's name. *Nussbacher v. Manderfeld*, 186 P.2d 548, 554 (Wyo. 1947) ("Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife . . . of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.") (internal quotation marks omitted) (citing RESTATEMENT (FIRST) OF TRUSTS § 441 (1935)).

Therefore, despite paying for all the Subject Property, Mr. Lain did not obtain a beneficial interest through a resulting trust in Mrs. Lain's interest. Mrs. and Mr. Lain each have a fifty percent undivided interest in the Subject Property. Now that Mr. Lain's

---

[8] The presumption that co-tenants take "equal undivided interests" when the conveying instrument is silent as to the co-tenants' respective shares "may be rebutted by proof that the co-tenants contributed unequal amounts . . . and there is neither a family relationship among the co-tenants nor any evidence of donative intent . . . ." *Bixler*, ¶ 19, 86 P.3d at 850. There is a family relationship in the case at hand; thus, the presumption is not rebutted.

ownership interest has been established, the Court must determine the federal tax consequences.

### 2) September Liberty Trust as a Nominee

Individuals who refuse to pay their taxes cannot escape the ultimate consequences of their decisions by placing title to their property in another's name "while actually retaining some or all of the benefits of true ownership." *See Holman*, 505 F.3d at 1065. In other words, title retained in the name of a nominee[9] for a delinquent taxpayer still constitutes "property" or a "right to property" of the delinquent taxpayer susceptible to an IRS tax lien. *Id.* (quoting *Spotts*, 429 F.3d at 251). Six factors govern this Court's analysis of whether September Liberty Trust is a nominee:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Id.* at 1065 n.1 (10th Cir. 2007) (quoting *Spotts*, 429 F.3d at 253 n.2.). Although Mr. Lain might not be a "transferor" in the technical sense that the Whites were the ones actually transferring the property, the Court concludes that these factors are still relevant because the

---

[9] "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (citing *Black's Law Dictionary* (7th ed. 1999). The determination of nominee status empowers a court to find that a nominee holds no interest in the property at issue. *See, e.g., United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1032 (10th Cir. 1974); *United States v. Elsberg*, No. CIV.A08CV00552MSKKLM, 2009 WL 1609399, at *6 (D. Colo. Mar. 18, 2009) (not reported).

Tenth Circuit "has recognized that a tax lien may be enforced when the taxpayer has never held legal title to the property but has directed that title be placed in a third party's name." *Id.* (citing *Miller Bros. Const. Co.*, 505 F.2d at 1036).

First, although September Liberty Trust paid the down payment for the Subject Property, all the money that came into September Liberty Trust did so as payment for Robert Lain's services. Therefore, it was Robert Lain who provided consideration for the Subject Property. Second, the Whites transferred the property to September Liberty Trust many years after Mr. Lain stopped paying income taxes, thereby accumulating tax liability. Third, there is a close relationship between Mr. Lain and September Liberty Trust: among other things, he was the initial trustee, he deposited his income into its bank accounts, September Liberty Trust's Taxpayer Identification Number at Wells Fargo was the same as Mr. Lain's, and the Lains have used September Liberty Trust's bank accounts to make personal checks to themselves. Fourth, the conveyance was recorded. Fifth, Mr. Lain currently resides on the Subject Property and has done so for years. Sixth, Mr. Lain continued to enjoy the benefits of the Subject Property because he has lived there and he has built structures upon it.

Accordingly, the Court concludes that five out of the six factors are satisfied, and that September Liberty Trust is Mr. Lain's nominee with respect to his interest in the tenancy in common of the Subject Property. His decision to place his interest in September Liberty Trust's name does not prevent him from having an interest in the Subject Property, and, because he has an interest in the Subject Property, the United States has a lien upon it. The next issue is whether the United States can foreclose its lien in light of Mrs. Lain's interest.

3) The Right to Foreclose

The plain language of 26 U.S.C. § 7403 broadly permits "the United States to . . . subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." This language entitles the United States to foreclose liens held upon property in which people besides the delinquent taxpayer also hold a property interest. *E.g., United States v. Rodgers*, 461 U.S. 677, 691 (1983); *United States v. Gibbons*, 71 F.3d 1496, 1501 (10th Cir. 1995); *United States v. Overman*, 424 F.2d 1142, 1146 (9th Cir. 1970) ("Once the lien has been established, the statute empowers the district court to subject the whole of the property in which the delinquent taxpayer has an interest to a forced sale. The power is not limited to the sale of only the delinquent taxpayer's interest."). The United States is therefore entitled to sell the Subject Property at a foreclosure sale. That said, the United State must reimburse Mrs. Lain with fifty percent of the sale proceeds for her interest in the Subject Property. *Gibbons*, 71 F.3d at 1501.

**C) Default Judgment**

After filing its complaint on June 29, 2017, the United States served a summons and a copy of the complaint on Mrs. Lain and September Liberty Trust on July 8, 2017. ECFs No. 1, 4, 6. Neither Defendant appeared or filed a responsive pleading in this matter, the eighteen-months' timeframe notwithstanding. The Clerk of Court entered a default against them on April 17, 2018. ECF No. 24. The United States now seeks a default judgment declaring that Mrs. Lain and September Liberty Trust have no interest in the Subject Property so that it can sell the Subject Property with marketable title.

FED. R. CIV. P. 55(b)(2) permits a district court to enter a default judgment against a defendant. Initially, though, the court must determine whether it has jurisdiction and whether, if taken as true, the complaint's well-pled allegations state a claim for relief. *Nevada Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018) (citing *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); 10A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2688.1 at 63 (4th ed.)) (other citations omitted).

   1) Jurisdiction

The Court has already determined that it has subject matter jurisdiction. Still, though, the Court must decide whether it has personal jurisdiction over Mrs. Lain and September Liberty Trust.

FED. R. CIV. P. 4(k)(1)(A) states that personal jurisdiction may be established through service of process upon a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." In Wyoming, state "courts are authorized by statute to exercise personal jurisdiction over defendants on any basis which is not inconsistent with the Wyoming or United States constitutions." *O'Bryan v. McDonald*, 952 P.2d 636, 638 (Wyo. 1998) (citing WYO. STAT. ANN. § 5-1-107(a)). Compliance with due process requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Klein Frank, P.C. v. Girards*, 932 F. Supp. 2d 1203,

1210 (D. Colo. 2013) (explaining that minimum contacts can be displayed by proving that the defendant is subject to the court's general jurisdiction because of the defendant's "travel to the forum state," work performed in the forum state, or property ownership in the forum state) (citations omitted).

Here, the United States properly served Mrs. Lain and September Liberty Trust with a summons and a copy of the complaint in Wyoming, ECF Nos. 4, 6. Mrs. Lain resides in Wyoming and both of September Liberty Trust's trustees (and arguably beneficiaries) are residents of Wyoming. *Cf. Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1178 (10th Cir. 2015), *as amended* (Jan. 27, 2015), *aff'd sub nom. Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, (2016) (outlining the citizenship distinction for suits brought by a trustee on behalf of a trust and when a trust "itself is a party to the litigation" at hand). The Court thus finds that both Mrs. Lain and September Liberty Trust have extensive contacts with Wyoming, and that service of process established that this Court has personal jurisdiction over them. Finally, it should be remembered that this controversy partially concerns Mrs. Lain's and September Liberty Trust's challenged interests in the Subject Property, which is located in Wyoming. *Compl.* ¶ 9, ECF No. 1. As a result, this Court concludes that there are no issues with personal jurisdiction in this matter.

2) Validity of the United States' Claim for Relief

The United States asks this Court to find that Mrs. Lain and September Liberty Trust "have no interest in the subject property." But the Court has already determined that Mrs.

Lain does have an interest in the Subject Property. Therefore, consistent with this Court's earlier discussion, the Court cannot provide such relief.

Because the United States has not addressed Mrs. Lain's interest, it follows that the United States has not argued that September Liberty Trust is also her nominee. Nor has the United States argued that Mrs. Lain is Mr. Lain's nominee. "Arguments not raised are waived." *Garza v. Correct Care Sols.*, 451 F. App'x 775, 776 (10th Cir. 2011) (unpublished) (citing *United States v. Martinez*, 518 F.3d 763, 767 n.2 (10th Cir. 2008)). The Court thus cannot rule that Mrs. Lain holds no interest in the Subject Property. That said, this Court will enter an order that September Liberty Trust has no interest in the Subject Property with respect to Mr. Lain's interest because it is merely his nominee.

IV.   CONCLUSION

The IRS, the Tax Court, and now this Court all conclude that Mr. Lain owes the United States a substantial sum of money for his failure to pay income taxes. Arguments that this Court lacks subject matter jurisdiction, Mr. Lain is a nontaxpayer, and the IRS constructed a fraudulent casefile are all legally and factually frivolous. Accordingly, the Court finds that the United States' assessment should be reduced to a judgment, and that such judgment attaches to all of Mr. Lain's property and interests in property.

Mr. Lain is a tenant in common in a fee simple absolute with Mrs. Lain in the Subject Property. Consequently, the United States has a lien upon the Subject Property that it can foreclose. Fifty percent of the proceeds from the foreclosure sale, though, must be handed over to Mrs. Lain to compensate her for her interest. It is therefore

**ORDERED** that *Lain's Mo. for Summ. J.*, ECF No. 41, should be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the *United States' Mo. for Summ. J.*, ECF No. 51, should be and is hereby **GRANTED** to the extent that it seeks a determination that 1) Mr. Lain is indebted to the United States in the total amount of $1,775,060,06, as of December 13, 2018, 2) that the United States has valid tax liens attaching to all of Mr. Lain's property and rights in property, both real and personal, tangible and intangible, 3) that September Liberty Trust is Mr. Lain's nominee with respect to the Subject Property, and 4) that the United States' tax liens encumbering the Subject Property be foreclosed and sold according to the terms of this Court's *Order of Foreclosure and Decree of Sale*;

**IT IS FURTHER ORDERED** that the *United States Mo. for Default J.*, ECF No. 52, should be and is hereby **GRANTED** to the extent that it seeks a determination that September Liberty Trust is Mr. Lain's nominee and has no interest in the Subject Property. To the extent is seeks further relief, it should be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that all other pending motions in this matter should be and are hereby **DISMISSED AS MOOT**;

**IT IS FURTHER ORDERED** that all future conferences and the jury trial scheduled for May 13, 2019, should be and are hereby **VACATED.**

Dated this _____5ᵗʰ_____ day of February, 2019.

Alan B. Johnson
United States District Judge

29